IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RHONDA JACKSON, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: |
| ) | _____ |
| DOLGENCORP, LLC, ) | |
| Defendant. ) | |

## COMPLAINT

## JURY TRIAL DEMANDED

**COMES NOW** Plaintiff Rhonda Jackson ("Rhonda" or "Plaintiff"), and files this her Complaint against Defendant Dolgencorp, LLC ("Dollar General" or "Defendant").

## INTRODUCTION

1. Plaintiff Rhonda Jackson is a 60-year-old Black woman who worked for Dollar General for twenty-five (25) years.

2. Plaintiff began working for Dollar General on or about April 6, 1994.

3. Plaintiff remained a loyal employee for Dollar General until she was fired on July 2, 2019, the very day Plaintiff returned from taking medical leave under the Family Medical Leave Act ("FMLA").

1

4. Plaintiff was terminated because of her use of FMLA leave, a statutorily protected right. A causal connection exists between Plaintiff's termination and Plaintiff's FMLA leave usage.

5. Defendant's retaliation of Plaintiff's use of FMLA leave is in direct violation of the Family and Medical Leave Act, 29 U.S.C.A. § 2601, *et seq.*

## PARTIES

6. Plaintiff Rhonda Jackson is an adult resident of Oktibbeha County, Mississippi.

7. Defendant Dollar General is a Kentucky corporation doing business in Georgia. It may be served upon its registered agent, Corporate Service Company, at 192 Anderson Street, Suite 125, Marietta, GA, 30060, or upon an officer, a managing or general agent, or any other agent authorized by Dollar General, wherever they may be found.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617.

9. This Court is the proper venue for the instant dispute pursuant to 29 U.S.C. § 2617, as the actions alleged herein occurred in Georgia.

## FACTUAL BACKGROUND

10. Plaintiff was employed by Dollar General for twenty-five (25) years.

11. During her 25-year tenure at Dollar General, Rhonda was a model Dollar General employee who rose in the ranks.

12. Rhonda was regularly applauded for both her individual performance and her leadership of teams.

13. On December 16, 2014, Rhonda Jackson was promoted from merchandiser to Division Store Development Manager (then the functional equivalent of a DPM) for Dollar General's "New Stores" department, through which Dollar General opens its new Dollar General stores. Rhonda was the first and only African American, man or woman, to hold such a title.

14. Rhonda's reviews while at New Stores were positive. Nevertheless, in 2017, Dollar General Senior Director Ken Pysell unilaterally decided to transfer Rhonda to Dollar General's "Remodels" department, through which Dollar General renovates existing stores.

15. When Rhonda was transferred from New Stores to Remodels, she was placed under the direction of supervisor Scott Schneider, where she remained until his departure in July 2018.

16. After Mr. Schneider's departure, Rhonda did not have an official supervisor. Rhonda submitted her reports to Robin Joslin, a director who temporarily

filled Schneider's role as Rhonda's supervisor. Robin Joslin became Rhonda's official supervisor in February of 2019.[1]

17. After Rhonda began working for Robin Joslin, Rhonda experienced discriminatory and harassing treatment that she believed was due to her race and color. Rhonda reported this behavior to superiors who took no action.

18. In February of 2019, during her performance review for 2018, Rhonda Jackson reported the harsh treatment she suffered to Ken Pysell, Senior Director.

19. As these attacks grew more and more frequent, Robin Joslin's actions created a hostile work environment for Rhonda; every conversation with Joslin became a regurgitated attack on Rhonda.

20. Joslin constantly berated and belittled Rhonda during phone calls, via email, via text, and in person in front of her team. This treatment was considerably harsher than the treatment she gave Rhonda's younger and white counterparts.

21. Joslin's conduct was so severe and pervasive that it caused Rhonda to feel unwelcome and intimidated at her workplace.

22. After several months of enduring this treatment, Rhonda was admitted to Tallahassee Memorial HealthCare on March 3, 2019, upon the belief that she was having a heart attack after weeks of enduring this treatment. Rhonda soon learned

---

[1] Tammy Laney became Rhonda's supervisor for one month in January-February of 2019.

that the symptoms she was experiencing daily were related to severe anxiety and depression.

23. Rhonda was officially diagnosed with anxiety and depression by her primary care physician, Dr. Prentiss Parsons.

24. As a result of the dramatic toll on her health, she requested and was approved for medical leave pursuant to the Family and Medical Leave Act.[2]

25. Plaintiff's first FMLA leave began on March 5, 2019 and ended on April 10, 2019.

26. Upon return, Rhonda experienced disparate treatment from Pysell and Joslin.

27. Soon after her return, Joslin notified Rhonda that they would be meeting with Pysell on April 26, 2019, for her Performance Evaluation.

28. Rhonda summarized this April 26 meeting in her journal, stating:

> I know we have a policy where you can't retaliate against a person if you're on FMLA. But I could tell he was NOT HAPPY that I took the leave and actually came back to work. He had me scared to say anything, after he got upset whenever I tried to express my concern about giving [me] a fair chance. I'm really worried that he's going to have Robin set me up and get rid of me… I couldn't sleep last night,

---

[2] 29 U.S.C. § 2612(d) provides that an "eligible employee" is entitled to a total of twelve (12) work weeks of leave during any 12-month period if the employee has a serious health condition that makes the employee unable to perform the functions of the employee's position. Pursuant to 29 U.S. Code § 2611(2)(A), an "eligible employee" is an employee who has been employed for at least twelve (12) months by the employee's employer, and who has been employed for at least 1,250 hours of service with the employer during the previous 12-month period. The time Rhonda a leave of absence from work after she was admitted to the hospital on March 3, 2019 was therefore in accordance with her statutorily protected right as an American citizen.

>thinking about Retaliation that Robin, Kenny is [sic] about to put me through. Seen & unseen danger, retaliation, prejudice, etc[.]

A true and correct copy of Rhonda Jackson's journal entry from April 26, 2019 is attached hereto and incorporated herein as **Exhibit A**.

29. After this April 26, 2019 meeting, Joslin began forcing Rhonda to jump through even more extraordinary and unnecessary hoops.

30. On June 9, 2019, Rhonda Jackson received a Performance Improvement Plan ("PIP") detailing alleged deficiencies and performance problems. *See* Performance Improvement Plan, attached hereto and incorporated herein as **Exhibit B**.

31. A PIP is a document used by Dollar General to identify areas of non-compliance with job expectations. The document is purportedly intended to identify these areas of non-compliance and provide a timeline for reaching compliance to avoid termination from Dollar General.

32. In practice, the PIP is a tool used by Dollar General Supervisors to oust unwanted employees.

33. To that end, the PIP was entirely unwarranted and gave Rhonda no opportunity to improve her performance and keep her job. Despite the continued harassment, Rhonda had remained proactive in seeking to remedy the alleged deficiencies listed on the PIP. In fact, during her review of the PIP with Rhonda,

Joslin reiterated that Rhonda was doing "all of the things [listed in the PIP] at this time."

34. In sum, the PIP listed only issues that Rhonda had either already corrected or issues that had not yet been brought to Rhonda's attention. Indeed, the only items left purportedly "unmet" were items Rhonda was being informed of for the very first time in the PIP meeting. Yet apparently, despite Rhonda's best efforts, Joslin remained unsatisfied.

35. After several attempts to receive an update, Rhonda Jackson contacted Ken Pysell and asked to take her accrued vacation time, and to discuss a potential retirement from the company, as she feared that her reports of discrimination and harassment would continue to go unremedied, and persist as long as she stayed at Dollar General.

36. During this time, Rhonda requested and was approved, to take a second FMLA leave, beginning on June 24, 2019 and ending on July 2, 2019.

37. Pysell called Rhonda on July 2, 2019, The day Rhonda returned from her medical leave, to tell her that she could not take her vacation time because she was on a PIP.

38. In that same conversation, Pysell told Rhonda that her options were (1) to be fired that day and receive $7,493.36, or (2) to be fired in September of 2019 under the PIP without access to any of her benefits.

39. Pysell told her Rhonda she had five minutes to decide and that she had to "take it or leave it."

40. That same day, Jaclyn Dees, Human Resources Manager at Dollar General, emailed Rhonda. *See* July 2-11 Email Correspondence Between Rhonda Jackson and Jaclyn Dees, attached hereto and incorporated herein as **Exhibit C**.

41. Ms. Dees requested that Rhonda sign the attached Confidential Separation Agreement and Release of Claims ("Separation Agreement"). *See* Separation Agreement, attached hereto and incorporated herein as **Exhibit D**.

42. The Separation Agreement would have prohibited Rhonda from ever filing "any and all claims, actions, demands, liabilities, and/or causes of action," including "Family & Medical Leave Act… and any and all claims for discrimination, harassment, retaliation, wrongful discharge, [or] emotional distress." *See* Ex. D, p. 1, ¶ 3. By signing the agreement, Rhonda would have agreed not to file any lawsuit against Dollar General in the future. *See* Ex. D, p. 2, ¶ 5.

43. In response, Rhonda contacted Ms. Dees to confirm that she was being terminated and to inform Ms. Dees that she would not be signing the documents.

44. Rhonda further reiterated that she was not leaving Dollar General voluntarily, and that she had been the victim of discrimination and was being terminated because she reported Joslin's discriminatory conduct and because she elected to use her FMLA leave. *See generally* Ex. C.

45. In related litigation, Plaintiff has taken the depositions of Ken Pysell, Robin Joslin, and Jaclyn Dees. The deposition testimony evidences willfulness by Defendant through Pysell, Joslin, and Dees.

## CAUSE OF ACTION
## COUNT I: VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

46. Plaintiff incorporates and realleges each of the preceding paragraphs as if fully set forth herein.

47. Dollar General and its employees Robin Joslin and Kevin Pysell violated 29 U.S.C.A. § 2601 by taking adverse action against Plaintiff in retaliation for her exercising her right to take FMLA leave.

48. Dollar General intentionally discriminated against Plaintiff for exercising her right to take FMLA leave.

49. Dollar General and its employee Ken Pysell retaliated against Plaintiff for taking her FMLA leave by firing her.

50. Dollar General employs at least fifty (50) employees within seventy-five (75) miles of Plaintiff's worksite. *Taylor v. Texaco, Inc.*, 510 F. Supp. 2d 1255 (N.D. Ga. 2007).

51. Accordingly, Plaintiff was entitled to FMLA leave under the "worksite requirement."

52. Furthermore, FMLA is only eligible for employees that have been employed for at least twelve (12) months by the employer and for at least 1,250 hours of service during that twelve-month period.

53. Rhonda worked for Dollar General for twenty-five years. As such, Plaintiff's leave was permissible under FMLA.

54. After experiencing discriminatory treatment and harassment as a Dollar General employee, Rhonda's health was severely affected.

55. On March 3, 2019, Rhonda was admitted to Tallahassee Memorial HealthCare due to her belief that she was experiencing a heart attack. Plaintiff soon learned that the symptoms she was experiencing were related to severe anxiety and depression.

56. Rhonda suffered daily from anxiety and depression, as a result of Robin Joslin's treatment and belittlement.

57. As a result of the dramatic toll on her health, Rhonda applied for FMLA leave, and soon after, Plaintiff's request was approved.

58. Rhonda's first FMLA leave began on March 5, 2019 and ended on April 10, 2019.

59. Upon return, Rhonda experienced disparate treatment from Pysell and Joslin.

60. Rhonda requested and was approved, to take a second FMLA leave beginning on June 24, 2019 and ending on July 2, 2019.

61. On July 1, 2019, Rhonda requested to use her accumulated five weeks of vacation time.

62. On July 2, 2019, Rhonda's vacation request was denied.

63. The day Rhonda returned, on July 2, 2019, she was provided with two options: (1) immediate termination with $7,493.36 or (2) continue to work until September 2019 without access to any benefits.

64. Rhonda engaged in a statutorily protected activity, she suffered an adverse employment decision, and the decision was causally related to the protected activity.

65. Rhonda termination was sufficiently close in time to her FMLA leave to support an inference of causation.

66. The timing of her termination further demonstrates that Dollar General's conduct, through Pysell and Jaclyn Dees, was willful and in retaliation for taking her second medical leave under FMLA.

67. Doller General's actions, along with the actions of its employee Ken Pysell, were motivated by an impermissible retaliatory or discriminatory animus.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff prays:

a. That process issue to the Defendant and that they be required to answer in the time allowed by law;

b. That liquidated damages of, from, and against the Defendant, be awarded to the Plaintiff for Plaintiff's claims of retaliation in violation of 29 U.S.C.A. § 2617 in an amount to be proven at the trial of this matter;

c. That Plaintiff be awarded punitive damages against the Defendant;

d. That Plaintiff be awarded reasonable expenses incurred in this litigation, including reasonable attorney and expert fees;

e. That Plaintiff be awarded actual, compensatory, economic, and non-economic damages; and

f. That the Plaintiff receive any other further and general relief which this Court deems just and proper.

Respectfully submitted, this the 28th day of April 2022.

/s/Dorsey R. Carson, Jr.
Dorsey R. Carson, Jr.
GA Bar No. 940300
CARSON LAW GROUP, PLLC
881 Peachtree St. NE
Atlanta, GA  30305
Telephone:	601-351-9831
Facsimile:	601-510-9056
dcarson@thecarsonlawgroup.com
*Attorneys for Plaintif*